UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALLY J. WANAMAKER, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| TOWN OF WESTPORT | : | |
| BOARD OF EDUCATION, and | : | |
| ELLIOT LANDON, Individually, | : | |
| | : | |
| | : | |
| Defendants. | : | NOVEMBER 16, 2011 |

## COMPLAINT

### NATURE OF THE ACTION

1.     This action seeks equitable relief and damages resulting from defendants' violation of of rights afforded Sally J. Wanamaker under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*., the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et seq*., and the contract between the Westport Education Association and defendant Westport Board of Education of which plaintiff Wannamaker is an intended third party beneficiary.

2.     Wanamaker was employed in the Westport Public Schools from January 2000 until defendant Westport Board of Education terminated her employment on April 27, 2011.  Wanamaker, an exemplary performer during her tenure, contends that her termination was illegally motivated by: (i) her exercise of medical leave rights in 2009 for the birth of her first child, (ii) her anticipated need to take periodic FMLA leave thereafter to care for her infant daughter, who was born with a

congenital heart defect, (iii) her anticipated need to take medical leave for herself due to a medical disability she incurred during delivery, (iv) her opposition to illegal conduct, and (v) discrimination based on her disability.

## PARTIES

3. Plaintiff Sally J. Wanamaker is a resident of the State of Connecticut, currently residing in Fairfield, Connecticut.

4. Defendant Westport Board of Education ("Westport" or "Board") is a local board of education duly organized under the laws of the State of Connecticut.

5. Defendant Elliot Landon is Superintendent of Westport Public Schools and, upon information and belief, resides in Westport, Connecticut.

## JURISDICTION AND VENUE

6. The Court has federal question jurisdiction over this case. It involves claims arising under the FMLA and ADA. The Court as supplemental jurisdiction over Wanamaker's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

7. The claims asserted in this action arose within this district and the alleged damage occurred in this district. Venue is therefore proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391(b)(2) and (3).

**ADMINISTRATIVE HISTORY AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. Wanamaker has exhausted administrative remedies.

9. On February 10, 2011, Wanamaker filed timely claims of discrimination with the U.S. Equal Employment Opportunity Commission and Connecticut Commission on Human Rights and Opportunities (CHRO). On June 15, 2011, the CHRO retained her case for a full investigation after a favorable Merit Assessment Review. On September 13, 2011, the CHRO granted Wanamaker a release of jurisdiction to pursue her claims in court.

10. In late 2010 and early 2011, Wanamaker participated in a teacher termination hearing pursuant to Connecticut General Statutes §10-151. On April 4, 2011, a three-member Panel held that it had no jurisdiction to apply or interpret Connecticut's anti-discrimination law, as referenced in Article XIX(A) of the contract between the teachers' union and Westport Board of Education ("Contract"), to the facts of Wanamaker's case. It further held that the CHRO and courts were the only appropriate forum for application of the law to the facts of her case:

> The claim that the Administration did not offer Ms. Wanamaker a "comparable" position within the meaning of the Connecticut anti-discrimination laws; or whether the only comparable position was that of a computer teacher; or whether the administration had a legal duty to remove someone from that assignment and give it to Ms. Wanamaker are all issues which can only be addressed by the agencies assigned that jurisdiction under Connecticut law. We have no jurisdiction to decide them. To try them under a Section 10-151 hearing would trespass on the procedures and jurisdiction of the state courts and the Connecticut Commission on Human Rights and Opportunities. The panel has decided that under the law as stated by the Connecticut Supreme Court, the panel has no jurisdiction to make findings as to whether the Administration did or did not comply with these laws.

## ALLEGATIONS

11. Wanamaker began serving on the faculty of the Westport Public Schools system in December 1998 as an unpaid intern. She obtained a full-time position in January 2000 and obtained tenure in 2004. She held the position of Computer Teacher in the Greens Farms School from September 2002 through June 2009.

12. She helped develop and implement a curriculum and comprehensive lesson plans for this computer class during her tenure. It was designed to help young students learn how to use computers to further their education. She received raises and favorable reviews every year, and was never subject to any negative personnel action.

13. In April 2009, while on maternity leave under the FMLA, Wanamaker incurred a spinal injury and disability, transverse myelitis, resulting from the birth of her daughter. In addition, her daughter was born in April 2009 with a serious, congenital heart defect which would require future surgery to repair.

14. In July 2009, shortly before the 2009-2010 school year began, Wanamaker's doctor, Peter McAllister, suggested that she might want to take a 30 to 60-day medical leave at the beginning of the school year, depending upon how she felt in August.

15. Wanamaker then conferred with Margaret Breines of Westport's human resources department regarding a possible brief medical leave at the beginning of the school year. Breines stated that her position would be held for her if she needed to take a health-related medical leave.

16. Based on this representation, McAllister wrote a note dated July 24, 2009 to the principal of Green's Farms school, John Bayers. It stated that due to complications resulting from

her pregnancy, Wanamaker might not be able to return to work when the school year began on August 27, 2009, and might require 30 to 60 days of medical leave.

17. Shortly after receiving this note, Bayers called Wanamaker and said that the substitute teacher who had been trained to cover her computer teaching position during her maternity leave would continue teaching during this 30 to 60-day period.

18. On August 10, 2010, however, Bayers, at the direction of defendant Landon, informed Wanamaker that he had decided to replace her permanently.

19. The individual Bayers selected to replace Wanamaker, Nicole Fieschel, did not suffer from any physical disability, did not have children, and was not perceived as needing intermittent time off in the future relating to a disability. She was also less qualified in terms of computer teaching experience. A non-tenured teacher whose position had been made redundant due to enrollment, Sarah Stefans, was thereupon moved into Fieschel's position. Stefans also did not suffer from any disability that might require future medical leave.

20. Wanamaker was, in sum, selected out of her position due to her disability, perceived need to take medical leave in the future, and exercise of FMLA rights.

21. Bayers advised Wanamaker that when she was ready to return, she could come back as a substitute classroom teacher. This position, however, was not equivalent to the computer teacher position she had held since 2001, and was in reality a demotion. McAllister informed her that it would aggravate her transverse myelitis disability by subjecting her to entirely new curricula demands, physical requirements, and academic subject matter.

22. Wanamaker informed Bayers that he was forcing her to choose between: (i) taking brief medical leave time which she had earned over nine years' of employment, and (ii) keeping her

job. She stated that if her employment was indeed at stake she would return by the beginning of the school year, and at most would need a brief medical leave, or some reasonable accommodation such as teaching from a chair instead of standing.

23. On August 16, 2009, Wanamaker spoke with Edward Huydic, former president of the Westport Education Association union. Huydic asked Wanamaker whether her daughter had a heart condition which might require surgery.

24. Wanamaker had never shared this personal information with Huydic before this phone call.

25. He told Wanamaker that the Superintendent, defendant Landon, had brought this subject up in an earlier conversation with him, and told her that it was one of the reasons why her computer teacher position had been assigned to another teacher. Huydic further conveyed that Landon had expressed concern that Wanamaker's disability, and the future heart surgery on her infant daughter, might result in future absences.

26. Shortly before Wanamaker's maternity leave in February 2009, defendant Landon had displayed hostility and illegal animus toward teacher absences, regardless of whether the absences were health-related or otherwise legitimate. A letter he distributed to the union membership on this issue in 2008 caused what Huydic described as a "fury" among Westport teachers.

27. Huydic prevailed upon Landon to issue what he termed an apology to all 500 plus teachers in the union for his letter.

28. Thereafter, letters involving personnel matters were planned to come from human resources instead of Landon.

29.     Defendant Landon's follow-up communication on teacher absences continued to demonstrate animus and illegal hostility toward some categories of teacher absences which were, indisputably, legally protected under the union contract as well as federal and state law.

30.     Specifically, a September 19, 2008 email conveyed that his "regret" was that he did not previously separate absences related "in-district professional activities" from absences related to "occasional illness, various personal and other non-continuous absence-related reasons." He implied that the latter category were somehow problem or illegitimate absences, whereas in-district professional activity absences were acceptable.

31.     On August 17, 2009, Bayers requested that Wanamaker clean out her classroom and was placed on leave.

32.     Wanamaker retained counsel and in May 2010 again sought reinstatement to her computer teacher position. She was again denied. Defendant Board offered her instead a full-time classroom teacher position, which was (i) not equivalent to her computer teacher position and (ii) was contrary to her doctor's recommendation that she not be placed in a position other than the computer teacher position due to her disability.

33.     To date, she has never been offered the computer teacher position back, or an equivalent position within the Westport school system, though the position continues to exist at Greens Farms School, and four other schools with the school district.

34..    Article XIX(A) of the contract between Westport and the Westport Education Association states:

"A.     Maternity Leave

> An employee requiring leave of absence because of disability resulting from pregnancy shall be granted necessary leave.  Such leave shall be granted from accumulated sick leave as set forth in Article XVII of this Agreement, in conformity with Section 46a-60 of the Connecticut General Statutes.

35. Contrary to this contract provision as well as the obligations imposed on Westport by federal and state law, Wanamaker was stripped of her computer teacher position because of her medical leave, the possibility that she might require additional medical leave relating to her disability and her daughter's heart condition, and for complaining about the defendants' unlawful decision-making regarding her employment.

36. Conn. Gen. Stat. § 46a-60 provides that it shall be illegal:

> (7) For an employer, by the employer or the employer's agent: (A) To terminate a woman's employment because of her pregnancy; (B) to refuse to grant to that employee a reasonable leave of absence for disability resulting from her pregnancy; (C) to deny to that employee, who is disabled as a result of pregnancy, any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained by the employer; *(D) to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return* unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so.

(emphasis added).

37. On August 16, 2010, defendant Board gave Wanamaker notice of her proposed termination.  On September 1, 2010, Wanamaker requested a termination hearing pursuant to Conn. Gen. Stat. § 10-151, which took place in late 2010 and early 2011.

38. On April 27, 2011, defendant Board terminated Wanamaker's employment on the false grounds of "other due and sufficient cause"  Defendant Board of Education based its decision upon a recommendation of an arbitration panel which was not binding and, as noted above, expressly declined to follow or apply applicable law, instead deferring to administrative agencies and

8

the courts.

39. The Board's refusal to acknowledge or apply controlling federal and state law, and to reinstate plaintiff to her former position of employment, or an equivalent position, constituted further discriminatory and retaliatory conduct, and has caused her substantial economic and non-economic damages, including lost past and future wages, lost benefits, attorneys' fees, costs, and compensatory damages.

## COUNT ONE

**Interference with the Exercise of Rights under the FMLA, 29 U.S.C. § 2615(a)(1)**

**(Against both defendants)**

40. Paragraphs 1 through 39 are incorporated by reference.

41. Wanamaker was an "employee" of defendant Board of Education within the meaning of 29 U.S.C. § 2611(2)(A) because she had worked for more than 1,250 hours in the 12 consecutive months before she went on medical leave for pregnancy, in accordance with the provisions of the FMLA.

42. Defendant Board of Education was an "employer" of Wanamaker at all times relevant to this action within the meaning 29 U.S.C. § 2611(4)(A) since it was engaged in commerce and employed 50 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

43. By its actions, defendants have interfered with Wanamaker's exercise of rights under the FMLA by terminating her employment and refusing to restore her to her position or an equivalent position.

44. Wanamaker has suffered damages as a result of the defendants' unlawful conduct, including lost past and future wages, and lost benefits.

## COUNT TWO

### Retaliation in Violation of the FMLA, 29 U.S.C. § 2615(a)(2)

### (Against both defendants)

45. Paragraphs 1 through 44 are incorporated by reference.

46. By its actions, defendants unlawfully retaliated against Wanamaker in violation of the FMLA.

47. Wanamaker has suffered damages as a result of the defendants' unlawful conduct, including lost past and future wages, and lost benefits.

## COUNT THREE

### Discrimination in Violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112

### (Against defendant Board of Education)

48. Paragraphs 1 through 47 are incorporated by reference.

49. By its actions, defendant Board of Education unlawfully discriminated against Wanamaker in violation of the ADA.

50. Wanamaker has suffered damages as a result of the defendants' unlawful conduct, including lost past and future wages, and lost benefits.

## COUNT FOUR

**Discrimination in Violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1)**

**(Against defendant Board of Education)**

51. Paragraphs 1 through 50 are incorporated by reference.

52. By its actions, defendant Board of Education unlawfully discriminated against Wanamaker in violation of CFEPA.

53. Wanamaker has suffered damages as a result of the defendant's unlawful conduct, including lost past and future wages, and lost benefits.

## COUNT FIVE

**Discrimination in Violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(7)**

**(Against defendant Board of Education)**

54. Paragraphs 1 through 53 are incorporated by reference.

55. By its actions, defendant Board of Education unlawfully discriminated against Wanamaker in violation of CFEPA.

56. Wanamaker has suffered damages as a result of the defendant's unlawful conduct, including lost past and future wages, and lost benefits.

## COUNT SIX

### Breach of Contract

### (Against defendant Board of Education)

57. Paragraphs 1 through 56 are incorporated by reference.

58. By its actions, defendant Board of Education breached the terms of its Contract with the Westport Education Association of which Wanamaker was a member and express beneficiary.

59. Wanamaker has suffered damages as a result of the defendant's breach, including lost past and future wages, and lost benefits.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that the Court:

1. Accept jurisdiction over this matter;

2. Empanel a jury;

3. Award the following damages and/or equitable relief:

a. A mandatory injunction, pursuant to 29 U.S.C. § 2617(a(B), directing the defendants to rehire Wanamaker to her former position and to restore to her all employment benefits, lost wages, bonuses and any other compensation she would have earned or accrued had she not been terminated;

b. Money damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(I)-(iii) to compensate Wanamaker for all losses sustained as a result of the defendants' termination of her employment, and an additional, equal amount as liquidated damages, including front pay in lieu of reinstatement;

c. Attorneys' fees and costs incurred by Wanamaker in connection with this action pursuant to 29 U.S.C. § 2617(a)(3);

d. Punitive damages;

e. Prejudgment and Post-Judgment interest;

f. Specific performance; and

4. Retain jurisdiction over this matter until defendants have fully complied with all orders of the Court.

The plaintiff demands a trial by jury on all counts.

PLAINTIFF
SALLY J. WANAMAKER

By:  *Jeffrey S. Bagnell*
Jeffrey S. Bagnell
Federal Bar No. CT18983
Lucas | Bagnell LLC
18 Kings Highway North
Westport, Connecticut 06880
(203) 227-8400
(203) 227-8402 (fax)
jbagnell@lucasbagnell.com

Attorneys for Plaintiff