UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SALLY J. WANAMAKER,                     :
     PLAINTIFF,                        :
                                          :
v.                                      :          CIVIL ACTION NO.
                                          :          3:11-cv-1791 (VLB)
                                          :
WESTPORT BOARD OF EDUCATION, and        :
ELLIOT LANDON, Individually,            :
     DEFENDANTS.                       :          SEPTEMBER 25, 2012

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [Dkt. #14]**

## I.   Introduction

Plaintiff, Sally Wanamaker ("Wanamaker"), brings this action against the Westport Board of Education ("Board") and Superintendent Elliot Landon individually asserting several violations of federal and state employment laws relating to the circumstances of her return to her position as a computer teacher in the Westport public school system following a difficult pregnancy.  Currently pending before the Court is a motion to dismiss filed by both Defendants seeking to dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.    Factual Background

Plaintiff was employed by the Westport Public Schools from January 2000 until April 27, 2011. [Dkt #1, Complaint ¶ 2]. She began to work for Westport Public Schools as an unpaid intern in December 1998, became a full-time teacher in January 2000, obtained tenure in 2004, and served as a "Computer Teacher in

the Green Farms School from September 2002 through June 2009." *Id.* at ¶ 11. Plaintiff contends that she was an "exemplary performer during her tenure," noting that she "received raises and favorable reviews every year, and was never subject to any negative personnel action." *Id.* at ¶¶ 2, 12.

In April 2009, while on maternity leave under the Family Medical Leave Act ("FMLA"), Plaintiff gave birth to her daughter. *Id.* at ¶ 13. "Wanamaker incurred a spinal injury and disability, transverse myelitis, resulting from the birth of her daughter. In addition, her daughter was born in April 2009 with a serious, congenital heart defect which would require future surgery to repair." *Id.*

Article XIX(A) of the contract between Westport and the Westport Education Association pertains to maternity leave and provides that:

> An employee requiring leave of absence because of disability resulting from pregnancy shall be granted necessary leave. Such leave shall be granted from accumulated sick leave as set forth in article XVII of this Agreement, in conformity with Section 46a-60 of the Connecticut General Statutes.

[Dkt. #1, Complaint ¶ 34].

In July 2009, before the 2009-2010 school year began, Plaintiff's doctor, Peter McAllister recommended that she take a 30 to 60 day leave at the start of the school year "depending upon how she felt in August." *Id.* at ¶ 14. Plaintiff spoke with Margaret Breines "of Westport's human resources department" about the possibility of a brief medical leave at the beginning of the school year and Ms. Breines "stated that her position would be held for her if she needed to take a health-related medical leave." *Id.* at 15. On July 24, 2009, Dr. McAllister sent a letter to John Bayers, Principal of the Green's Farm school, notifying him that

2

Plaintiff might not be able to return to work at the beginning of the school year, and might require 30 to 60 days of leave. *Id.* at 16. Principal Bayers told Plaintiff that the substitute teacher who had been trained to cover her computer teaching position during her maternity leave would continue to cover her responsibilities during Plaintiff's 30 to 60 days of leave. *Id.* at ¶ 17.

However, Plaintiff alleges that on August 10, 2010, Principal Bayers, "at the direction of defendant Landon, informed Wanamaker that he had decided to replace her permanently." [Dkt. #1, Complaint ¶ 18]. Plaintiff contends that the individual selected to replace her, Nicole Fieschel, "did not suffer from any physical disability, did not have any children, and was not perceived as needing intermittent time off in the future relating to a disability." *Id.* at ¶ 19. Plaintiff further contends that Fieschel "was also less qualified in terms of computer teaching experience," thus, "[a] non-tenured teacher whose position had been made redundant due to enrollment, Sarah Stefans, was thereupon moved into Fieschel's position. Stefans also did not suffer from any disability that might require future medical leave." *Id.* at ¶19.

In sum, Plaintiff asserts that she was "selected out of her position due to her disability, perceived need to take medical leave in the future, and exercise of FMLA rights." *Id.* at ¶¶19-20.

Principal Bayers informed Plaintiff that "when she was ready to return, she could come back as a substitute classroom teacher." *Id.* at ¶ 21. Plaintiff asserts that a substitute classroom teacher position "was not equivalent to the computer teacher position she had held since 2001, and was in reality a demotion." [Dkt. #1,

Complaint ¶ 21].  Plaintiff alleges that she informed Principal Bayers that he was asking her to choose between her job and medical leave. *Id.* at ¶ 22. Plaintiff further informed Principal Bayers that "if her employment was indeed at stake she would return by the beginning of the school year, and at most would need a brief medical leave, or some reasonable accommodation such as teaching from a chair instead of standing." *Id.*

On August 16, 2009, Plaintiff spoke with Edward Huydic, the former president of the Westport Education Association union. [Dkt #1, Complaint ¶ 23]. During the conversation, Huydic inquired about the health of Plaintiff's daughter and whether her heart condition would require surgery. *Id.* Plaintiff notes that she "had never shared this personal information with Huydic before this phone call." *Id.* at ¶¶ 23-24. Plaintiff alleges that Huydic told her that Defendant Landon had brought up the subject during an earlier conversation and stated that this situation "was one of the reasons why her computer teacher position had been assigned to another teacher." *Id.* at ¶ 25. Plaintiff further alleges that Huydic informed her that Landon "expressed concern that Wanamaker's disability, and the future heart surgery on her infant daughter, might result in future absences." *Id.*

Plaintiff alleges that prior to her maternity leave in February 2009, Defendant Landon "displayed hostility and illegal animus toward teacher absences, regardless of whether the absences were health-related or otherwise legitimate." [Dkt. #1, Complaint ¶ 26]. In particular, Landon distributed a letter to the union regarding teacher absences, causing "what Hyudic described as a

'fury' among Westport teachers." *Id.* Plaintiff contends that Huydic asked Landon to apologize to the teachers in the union." *Id.* at ¶ 27.

Plaintiff alleges that Defendant Landon continued to communicate with members of the union regarding teacher absences. *Id.* at ¶29. In particular, Plaintiff alleges that on September 19, 2008, Landon sent an email expressing "regret" over not distinguishing between absences related to "in-district professional activities" and absences related to "occasional illness, various personal and other non-continuous absence-related reasons," thus implying that "the latter category were somehow problem or illegitimate absences, whereas in-district professional activity absences were acceptable." *Id.* at ¶ 30.

On August 17, 2009, Plaintiff alleges that Principal Bayers asked her to clean out her classroom on and placed her on leave. [Dkt #1, Complaint ¶ 31]. Plaintiff retained counsel and sought reinstatement to the computer teacher position in May 2010. Plaintiff alleges that this request was again denied as the Defendant Board instead offered her a full-time classroom teacher position, which Plaintiff contends "was (i) not equivalent to her computer teacher position and (ii) was contrary to her doctor's recommendation that she not be placed in a position other than the computer teacher position due to her disability." *Id.* at ¶ 32.

On August 16, 2010, the Defendant Board gave Plaintiff notice of her proposed termination. [Dkt #1, Complaint ¶ 37]. On September 1, 2010, Plaintiff

requested a "termination hearing pursuant to Conn. Gen. Stat. § 10-151."[1] *Id.* A termination hearing was held "in late 2010 and early 2011." *Id.* Finally, on April 27, 2011, the Defendant Board terminated Wanamaker's employment." *Id.* at ¶38. Plaintiff alleges that the Defendant Board terminated her employment "on the false grounds of 'other due and sufficient cause." *Id.* Plaintiff further alleges that the Defendant Board based its decision "upon the recommendation of an arbitration panel which was not binding and [ . . . ] expressly declined to follow or apply applicable law, instead deferring to administrative agencies and the courts." *Id.*

### III.    Standards of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted) "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl.*

---

[1] This statute, in particular subsection (d), provides the reasons for which a tenured teacher may be terminated and provides that "[p]rior to terminating a contract, the superintendent shall give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with the superintendent, within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor." Conn. Gen. Stat. § 10-151(d).

*Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*(internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either

in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, both parties rely upon the May 6, 2009 letter responding to Plaintiff's request for Family Medical Leave, attached to the Motion to Dismiss as Exhibit B. [Dkt #15, Def.'s Mot. To Dismiss, Exhibit B]. Therefore, where Plaintiff had knowledge of the letter and both parties rely on the letter, the Court will consider the letter for the purposes of analyzing the pending motion to dismiss. *See Anderson v. Derby Bd. Of Educ.*, 718 F. Supp. 2d 258, 273 n.33 (D. Conn. 2010).

Lastly, in deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

## IV. Discussion

### A. FMLA Claims

Plaintiff has raised two distinct claims pursuant to the FMLA, including a claim of interference and a claim of retaliation. Plaintiff has raised these FMLA claims against both the Defendant Board of Education, and Defendant Landon in his individual capacity. Defendant Landon seeks to dismiss Plaintiff's FMLA claim against him, contending that the FMLA does not allow for the individual liability of public employees as "employers," and, alternatively, even if such liability is cognizable, Defendant Landon contends that he is entitled to qualified immunity.

1. **Individual FMLA liability**

The FMLA defines an "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. §2611(4)(A)(i). The statute includes in the general definition of "employer" "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. §2611(4)(A)(ii)(I). The statute further provides that the general definition of an employer includes "any 'public agency'', as defined in section 203(x) of this title." 29 U.S.C. §2611(4)(A)(iii). The statute thus, "explicitly provides for individual defendant liability" in (A)(ii)(I). *Smith v. Westchester County*, 769 F. Supp. 2d 448, 473 (S.D.N.Y 2011).

However, circuit courts have split on the question of whether the statute is recursive to provide for individual liability for supervisory personnel of public agencies by allowing 4(A)(ii)(I) to apply to 4(A)(iii).  Circuit courts are divided as to whether employee supervisors at public agencies may be held individually liable as "employers."  *Compare Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408, 413-17 (3d Cir. 2012), *Modica v. Taylor*, 465 F.3d 174, 183-87 (5th Cir. 2006), *and Darby v. Bratch*, 287 F.3d 673, 680-81 (8th Cir. 2002) (allowing for liability for supervisory personnel of public agencies), *with Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003), and *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) (not allowing for liability).

This split pervades among district courts as well, although a majority of district courts appear to have allowed for supervisory personnel of public

agencies to be held individually liable for violations of the FMLA. *Compare Smith,* 769 F. Supp. 2d at 475, *Cantley v. Simmons*, 179 F. Supp. 2d 654, 656-58 (S.D.W. Va. 2002), *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 412-13 (M.D. Pa. 1999) (collecting cases), *and Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1272-72 (D. Nev. 2001) (finding that "this statute becomes recursive" when applied to supervisory personnel of public agencies), *with Keene v. Rinaldi*, 127 F. Supp. 2d 770, 777-79 (M.D.N.C. 2000).

Thus, it appears that a majority of both circuit and district courts allow for such liability. Although this Court is not aware of any Second Circuit precedent on point, the Court notes that another district court within the Second Circuit has held, as a matter of first impression, that "Congress did not specifically exclude public employees from FMLA liability, and [so] the Court will not do so here." *Smith*, 769 F. Supp. 2d at 475. Thus the only authority addressing this particular question of statutory interpretation within the Second Circuit interpreted the FMLA to allow individual liability for supervisors at public agencies. *Id.* at 475-76.

However, "a district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's opinions persuasive, they remain free to disagree." *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987). Thus, this Court will conduct an independent analysis of this question of statutory interpretation.

"When interpreting the meaning of a statute, the court looks first to the language of the statute itself." *Morrow*, 142 F. Supp. 2d at 1272 (citing *United*

10

*States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). The literal meaning of the words controls unless such a reading "would 'compel an odd result'" or where there is clear evidence "that Congress did not intend words of common meaning to have their literal effect." *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989) (citations omitted). No such concerns exist here, so the plain text must control.

This Court agrees that "[t]he most straight forward reading of the text compels the conclusion that a public employee may be held individually liable under the FMLA." *Modica,* 465 F.3d at 186. *See Smith*, 769 F. Supp. 2d at 473-74 ("a fair reading of the plan language of the statute does not exclude public employees from individual liability."); *Rasic v. City of Northlake*, 563 F. Supp. 2d 885, 892 (N.D. Ill. 2008) (Congress "plainly has chosen to subject individually employees who 'act in the interest of the employer' with respect to employees to personal liability. We find no evidence in the statutory language or structure that Congress meant to do so only for private, and not public, employees.")

As the *Modica*, *Smith*, and *Rasic* courts concluded, the text of 29 U.S.C. § 2611(4)(A) is quite clear. 4(A)(iii) provides that "[t]he term 'employer' . . . includes . . . any 'public agency'." 29 U.S.C. § 2611(4)(A)(iii). Therefore, assuming it otherwise qualifies, an agency such as a Board of Education is an employer under the FMLA. 4(A)(ii)(I) elaborates on the meaning of the term employer by including in the definition of "employer" those individuals who operate on behalf of the employer, stating that "[t]he term 'employer' . . . includes any person who acts, directly or indirectly, in the interest of such employer to any of the

employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Thus, "this statute becomes recursive when applied to supervisory personnel, because the definition of employer refers back to the word employer itself" and 4(A)(ii)(I) supervisors who work for 4(A)(iii) public agency employers are clearly intended to be treated as employers themselves. *Morrow*, 142 F. Supp. 2d at 1272-73.

The statute, thus, clearly dictates that (1) public agencies are employers and (2) certain persons who act in the interest of "employers" can qualify as employers themselves. Therefore, it is apparent that the Board, a public agency, constitutes an employer under 4(A)(iii), and Defendant Landon, who works "in the interest of" the Board, must also be treated as an employer. 29 U.S.C. § 2611(4)(A)(ii)(I).

In so holding, this Court acknowledges, but finds unpersuasive, the reasoning of other circuits which this Court finds to be in contravention of the plain language of the statute. *See, e.g.,* Mitchell, 343 F.3d at 830 (finding that the separation of public agencies from supervisory personnel in "distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner.").  This Court can find no evidence that Congress intended for the statute to be interpreted according to anything other than its plain language or that such a reading would yield an odd result. *Public Citizen*, 491 U.S. at 454. Therefore, this Court finds that the FMLA's definition of "employer" may include employees of public agencies who act "directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. §26114(A)(ii)(I).

**2. Qualified immunity**

Defendants argue that even if the Court finds that statutory liability may extend to Defendant Landon, Defendant Landon is entitled to qualified immunity. Plaintiff rejects this assertion, contending that this argument is premature where discovery has not yet been completed.

**3.        Qualified immunity as to Individual FMLA Liability**

The goal of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity exists to ensure that officials are not inhibited in the performance of their duties by fear of personal liability. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). As the Supreme Court has made clear, "the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted); *see also Iqbal* at 658-86 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"). Thus, the qualified immunity doctrine functions to "avoid 'subject[ing] government officials either to the costs of trial or to the burdens of braod-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow*, 457 U.S. at 817-18). The Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the

13

earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. at 526.

This bar on reaching discovery where qualified immunity exists is absolute and cannot be avoided with the promise of less-costly or limited discovery.  *Iqbal* at 685-86 (The "promise" of "minimally intrusive discovery . . . provides especially cold comfort in this pleading context, where we are impelled to give real content to the concept of qualified immunity for high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties."); *accord Wicks v. Miss  State Emp't Serv.*, 41 F.3d 991, 996 (5th Cir. 1995) ("*any* discovery . . . even that limited in scope, is improper and immediately appealable as a denial of the benefits of the qualified immunity defense.").

Given the clear direction from the Supreme Court regarding the purposes of the doctrine of qualified immunity and its application, it is indisputably appropriate to review Defendant Landon's claim of qualified immunity at the motion to dismiss stage.

When reviewing a claim of qualified immunity, a court must consider "whether the facts that the plaintiff has alleged(See Fed. Rules Civ. Porc. 12 (b)(b)(6), (c)) or shown (see Rule 50, 56) make out a violation of a constitutional [or statutory] right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

Although previously the Supreme Court prescribed a mandatory two-step analysis, considering first the constitutional violation prong and then the clearly established prong, the Court has since recognized that this rigid procedure "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case," as "[t]here are cases in which it is plain that a constitutional right is not established but far from obvious whether in fact there is a constitutional right." *Pearson*, 555 U.S. at 236-37. Thus, the Supreme Court has provided district courts with the discretion to decide the order in which the two prongs of the qualified immunity analysis are applied. *Id.* at 243.

In providing the lower courts with the discretion to determine the order of qualified immunity analysis to be applied to a given case, the Supreme Court explicitly acknowledged that "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question of whether the relevant facts make out a constitutional question at all." *Id.* at 239.  As previously discussed, the question of public agency employee liability under the FMLA remains unresolved by the Second Circuit. Thus, this case presents such a situation, where the "clearly established" prong is more easily resolved than the constitutional violation prong.  Accordingly, the Court will first consider the "clearly established" prong.

Qualified immunity "protects government officials from liability where the officials' conduct was not in violation of a 'clearly established' constitutional

right." *Sudler v. City of New York*, 11-1198-cv (L), 11-1216-cv (con), 2012 WL 3186373, at *10 (2d Cir. Aug. 7, 2012). "If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." *Id.* (quoting *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)). "Qualified immunity thus shields government officials from liability when they make 'reasonable mistakes' about the legality of their actions, and 'applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal citations omitted) (quoting *Pearson*, 555 U.S. at 231).

As noted earlier, "[a] district court decision does not clearly establish the law even of its own circuit, much less that of other circuits. Although district judges within a particular circuit will frequently find each other's opinions persuasive, they remain free to disagree." *Hawkins*, 829 F.2d at 321. Neither the Supreme Court nor the Second Circuit has answered the question of individual liability of public agency employees for violations of the FMLA. Thus, where only one other district court within the Second Circuit previously addressed this question of liability, predicated upon a complicated question of statutory interpretation, it can hardly be said that such this liability was clearly established. Accordingly, Defendant Landon is entitled to qualified immunity for any purported violations of Plaintiff's rights under the FMLA. *See Modica*, 465 F.3d at 183-88 (holding that although individual employees of public agencies may be

held liable under the FMLA, this right has not yet been clearly established and thus the qualified immunity applies to preclude liability).

Accordingly, Defendants' motion to dismiss Plaintiff's FMLA claims against Defendant Landon on qualified immunity grounds is hereby granted.


### 4. FMLA Interference Claim

The FMLA "creates a private right of action to seek both equitable relief and money damages against any employer . . . in any Federal or State court of competent jurisdiction should that employer interfere with, restrain or deny the exercise of FMLA rights." *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 724-25 (2003) (internal quotations and citations omitted).

"The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of unpaid leave '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)). After this leave "the employee has the right to return to the position [s]he held before the leave or its equivalent", *Id.*, with equivalence determined based on "employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). However, if you are unable to perform an "essential function of the position because of a physical or mental condition, including the continuation of a serious health condition," you have no right to reinstatement. 29 C.F.R. § 825.216(c).

"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. 29 U.S.C. § 2615(a)(1). Additionally, it is unlawful to discriminate against someone "for opposing any practice made unlawful by this subchapter," filing an FMLA charge, or giving information in an FMLA proceeding. 29 U.S.C. § 2615(a)(2); 29 U.S.C. § 2615 (b).

The Second Circuit has recognized two distinct causes of action under the FMLA: "interference" and "retaliation." *Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004); *accord Voltaire v. Home Services Systems, Inc.*, No. 09-CV-5668 (SJT)(JO), 2011 WL 4710852, at *90 (E.D.N.Y. Sept. 30, 2011) ("The Second Circuit recognizes a distinction between claims which allege a violation of § 2615(a)(1) – so-called 'interference' claims – and claims which allege violations of § 2615(a)(2) and (b), which are called 'retaliation' claims."). The first two counts of the Complaint are based on these two causes of action.

Plaintiff alleges that "[D]efendants have interfered with Wanamaker's exercise of rights under the FMLA by terminating her employment and refusing to restore her to her position or an equivalent position." [Dkt #1, Complaint p. 9]. Defendant moved to dismiss Plaintiff's interference claims, arguing that she "fails to allege how granting the Plaintiff a classroom teacher position following her 18-month leave constitutes interference with and retaliation for exercising her rights under the FMLA." [Dkt #15, Def.'s Mot. To Dismiss pp. 8-9].

Although the Second Circuit has addressed claims of interference under the FMLA in the past, it has not yet articulated or identified the standard for such

18

claims. *See Potenza,* 365 F.3d at 168 (declining to articulate a standard as the claim was truly retaliation, not interference); *Sista*, 445 F.3d at 168 (declining to articulate a standard as plaintiff failed to present sufficient evidence). The weight of authority in the Circuit, as reflected in the decisions of district judges in the Southern, Eastern, Northern, and Western Districts of New York, holds that in order to establish a *prima facie* case of interference in violation of the FMLA a plaintiff must show that:

> (1) [S]he is an 'eligible employee' under the FMLA; (2) that [the employer] is an employer as defiend in [the] FMLA; (3) that [she] was entitled to leave under [the] FMLA; (4) that [she] gave notice to [the employer] of [her] intention to leave; and (5) that [she] was denied benefits to which she was entitled under [the] FMLA.

*See Higgins v. NYP Holdings, Inc.*, 836 F.Supp.2d 182, 191 (S.D.N.Y. 2011); *Santos v. Knitgoods Workers' Union, Local 155*, No. 99-cv-1499, 1999 WL 397500, at *3 (S.D.N.Y. Jun. 15, 1999), *aff'd*, 252 F.3d 175 (2d Cir. 2001); *Baker v. AVI Foodsystems, Inc.*, No. 10-cv-00159(A)(m), 2011 WL 6740544, at *13 (W.D.N.Y. Dec. 6, 2011); *Debell v. Maimonides Med. Ctr.*, No. 09-cv-3491 (SLT)(RER), 2011 WL 4710818 (E.D.N.Y. Sept. 30, 2011); *Leclair v. Berkshire Union Free Sch. Dist.*, No. 1:08-cv-01354 (LED/RFT), 2010 WL 4366897, at *5 (N.D.N.Y. Oct. 28, 2010).

As described above, the FMLA guarantees not only 12 weeks of leave, but a right of reinstatement to your job or its equivalent so long as you are able to perform the duties of the position. *Sista* at 174. "Failure to reinstate an employee to a prior position or its equivalent following FMLA leave is a properly pled FMLA interference claim." *Gauthier v. Yardney Technical Products, Inc.*, No. 3:05-cv-1362 (VLB), 2007 WL 2688854 at *7 (D. Conn. Sept. 13, 2007); *see Roberts v.*

*Ground Handling, Inc.*, 499 F. Supp. 2d 340 (S.D.N.Y. 2007) (analyzing a claim

relating to a failure to reinstate following FMLA leave as a claim of interference);

*Leach v. State Farm Mut. Auto Ins. Co.*, 431 Fed. Appx. 771, 776 (11th Cir. 2001)

("[I]t is undisputed that [employer] refused to let Leach return to his former

position after his FMLA leave ended. Thus, Leach made a prima facie showing of

FMLA interference with his right to reinstatement."); *Ford-Evans v. Smith*, 206

Fed. Appx. 332, 335 (5th Cir. 2006) ("[T]he right to reinstatement upon return from

leave is a right protected by the FMLA's interference provision"); *Kauffman v.*

*Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

Here, Plaintiff has alleged that the injuries resulting in her disability

occurred in April 2009 and that she was granted 12 weeks of FMLA leave which

ran concurrently with her paid sick leave.   [Dkt #1, Complaint ¶ 13 and Dkt #15,

Def.'s Mot. To Dismiss, Exhibit B].  Plaintiff does allege that she originally said, in

a July 24, 2009 letter to her school's principal John Bayers, that she "might not

be able to return to work when the school year began on August 27, 2009 and

might require 30 to 60 days of medical leave." [Dkt #1, Complaint ¶ 16]. However,

Plaintiff also alleged that she subsequently told Bayers during an August 10,

2009[2] conversation with him that if her employment was at stake, "she would

---

[2] **The Complaint technically states the date of this conversation as August 10, 2010, not 2009. However, the Court has assumed this was merely a typographical error, given the chronological context of the surrounding statements in the Complaint.** *See* **[Dkt #1, Complaint ¶s  16-24, 31] (Stating that the discussion of the replacement teacher occurred 'shortly after' a July 24, 2009 note. This section of the Complaint also comes immediately before the discussion of an August 16, 2009 conversation. Finally, Plaintiff alleges she was asked to "clean out her classroom and was placed on leave" on August 17, 2009). Additionally, Plaintiff**

return by the beginning of the school year, and at most would need a brief medical leave, or some reasonable accommodation such as teaching from a chair instead of standing." *Id.* at ¶ 22.  Thus Plaintiff has indeed alleged that she had communicated to Defendants that she had the ability to return to employment at the beginning of the school year with some reasonable accommodation.

Since Plaintiff has plausibly alleged that she had the ability to return to work at the end of her FMLA leave, the Court must next determine whether Plaintiff has pled that her employer refused to reinstate her to her original position or its equivalent.  "An equivalent position is one that is 'virtually identical' to the employee's former position 'in terms of pay, benefits, and working conditions' and it 'must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.'" *Pizzo v. HSBC USA, Inc.*, No. 04-CV-114A, 2007 WL 2245903, at *5 (W.D.N.Y. Aug. 1, 2007) (quoting 29 C.F.R. § 825.215(a)).

Despite her offer to return, Plaintiff alleges that she was only offered a position as a substitute classroom teacher which she claims was not equivalent to the computer teacher position she had held since 2001, and was in reality a demotion.  Plaintiff then alleges that she retained counsel and sought reinstatement to her original position in May 2010 which the Board denied. Plaintiff alleges that the Board instead offered her a full-time classroom teaching position which was not equivalent to her computer teacher position and contrary to her doctor's recommendation that she not be placed in a position other than

_____

alleges that she sought reinstatement in May 2010, action which would be unnecessary unless she was already replaced by then. *Id.* at ¶s 31-32.

the computer teacher position due to her disability.  Consequently, Plaintiff has plausibly alleged that a full-time classroom teaching position was not equivalent to her original full time computer teaching position to survive a Rule 12(b)(6) challenge.   Here, Plaintiff's allegation that the classroom teaching position is not equivalent to a computer teaching position is more than a conclusion and is therefore entitled to the assumption of truth on a motion to dismiss.  Accordingly, Plaintiff has stated a plausible claim for FMLA interference as she has alleged that she was able to return to work and her employer refused to reinstate her to her original position or its equivalent.   At this early stage the Court must accept Plaintiff's allegations of these facts as true.  Thus, the Complaint contains sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.  Therefore, Defendants' motion to dismiss Plaintiff's FMLA interference claim is denied.

### 5.    FMLA Retaliation Claim

The Second Circuit has stated that, "[i]n order to make out a *prima facie* case [of FMLA retaliation], [Plaintiff] must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168.  The "[p]laintiff must demonstrate that her taking FMLA leave constituted 'a negative factor in [Defendant's] decision to terminate' him or her." *Gillingham v. Geico Direct,* No.06-cv-1915(NGG), 2008 WL 189671 at *4 (E.D.N.Y. Jan. 18,2008) (citing *Sista,* 445 F.3d at 176); *see also Hale v. Mann,* 219 F.3d 61, 68

(2d Cir.2000) (holding that the FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking leave pursuant to the FMLA.").

FMLA retaliation claims are examined under the burden shifting framework established in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). *Sista,* 445 F.3d at 176. "Under the test set forth in *McDonnell Douglas,* the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a *prima facie* case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for its actions." *Debell,* 2011 WL 4710818, at *8 n.4 (internal quotation marks and citations omitted). "The employer's burden is "merely one of production, not persuasion; it can involve no credibility assessment. If the employer satisfies that burden, the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. In addition, the plaintiff must submit evidence that would permit a rational fact-finder to infer that the discharge was actually motivated, in whole or in part, by discrimination." *Id.* (internal quotation marks and citations omitted).

However, the "*McDonnell Douglas* burden-shifting framework is an evidentiary standard, not a pleading requirement," therefore a plaintiff need only allege facts sufficient to state a claim and not sufficient to establish a prima facie case." *Boykin v. KeyCorp,* 521 F.3d 202, 212 (2d Cir.2008) (internal quotations omitted); *see also Peterson v. Long Island R.R. Co.,* No. 10–cv–480, 2010 WL

2671717, at *2 (E.D.N.Y. June 30, 2010)("a complaint asserting an employment discrimination claim, including an FMLA retaliation claim, need not plead specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss").

Here, Plaintiff has indeed alleged sufficient facts to state a claim for FMLA retaliation.  In fact, Plaintiff has alleged a prima facie case of FMLA retaliation. She has alleged that she exercised rights under the FLMA, that she was qualified for her position and that she suffered adverse employment actions as a result of the proposed transfers to different teaching assignments and her eventual termination.  "In order to constitute an adverse employment action, it is not enough that defendants' gave plaintiff a subjectively less preferred teaching assignment; the assignment must be 'materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement.'" *Sotomayor v. City of New York*, No.10-cv-3411, 2012 WL 1889780, at *22 (E.D.N.Y. May 24, 2012) (quoting *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)).  Here, Plaintiff has alleged that the transfer to a substitute teaching position or a full time classroom non-computer teaching position was not equivalent to her original position and basically a demotion. These allegations therefore plausibly allege on a motion to dismiss that the teaching assignments were materially less prestigious and materially less suited to Plaintiff's skills and expertise as a full time computer teacher to constitute an adverse employment action.  In addition, Plaintiff has alleged that she was terminated from employment which is a quintessential adverse employment

action.  *See Moccio v. Cornell Univ.*, NO.09Civ.2601(PAE), 2012 WL3648450, at *28 (S.D.N.Y. Aug. 27, 2012) ("termination of employment is the quintessential materially adverse employment action").  Further, to the extent that an FMLA retaliation claim is governed by the more liberal standard applied to retaliation claims under Title VII and the ADA, Plaintiff has certainly alleged facts demonstrating that the Board's actions would have dissuaded a reasonable worker from taking FMLA leave.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).

Lastly, Plaintiff has plausibly alleged that the adverse employment actions occurred under circumstances giving rise to an inference of retaliatory intent. Here, Plaintiff has alleged that Huydic inquired as to whether Wanamaker's daughter's health condition would require future surgeries, that Landon told Huydic that her daughter's health condition was one of the reasons why Wanamaker's computer teaching position had been assigned to another teacher, and that Landon expressed concern that Wanamaker's disability and her infant daughter's health condition would result in future absences.  [Dkt. #1, Compl., ¶¶23-25].  Plaintiff has also made specific factual allegations that Landon displayed hostility and animus towards teacher absences as evidence by a particular letter and email distributed to the teacher's union. Id. at ¶¶26-30.  *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 333 (3d Cir. 1995) ("We have held that a supervisor's statement about the employer's employment practices or managerial policy is relevant to show the corporate culture in which

a company makes its employment decision, and may be used to build a circumstantial case of discrimination.").

It is well-established that "[v]erbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004). "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark', a court should consider the following factors: (1) who made the remark, i.e. a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Id.* at 518-19. Here, Plaintiff's allegations as to Landon and Huydic's comments demonstrate the required nexus as supervisors made the remarks, some of the remarks were made in relation to the employment decisions at issue, and a reasonable juror could view the remarks as discriminatory.

Further, Plaintiff also alleged that she was replaced during her FMLA leave and courts have held that "reassigning an employee's position during or following FMLA leave can contribute to an inference of retaliation." *Ridgeway* v. Royal Bank of Scotland Group, No3:11-cv-976(VLB), 2012 1033532, at *12 (citing *Adams v. Northstar Location Services, LLC*, No. 09-CV-1063 (JTC), 2010 WL

3911415, at *6 (W.D.N.Y. Oct. 5, 2010)). Taken together, this Court concludes that Plaintiff has sufficiently shown the indicia of retaliatory intent, necessary to state a FMLA retaliation claim at the motion to dismiss level.  Therefore, Defendants' motion to dismiss Plaintiff's FMLA retaliation claim is likewise denied.


### B. ADA Claims

Defendants have moved to dismiss Plaintiff's ADA claims arguing that "the Plaintiff fails to allege that she is a qualified individual with a disability or how she suffered an adverse employment action." [Dkt #15, Def.'s Mot to Dismiss, p. 9]. Upon reviewing Plaintiff's ADA allegations, it is unclear whether Plaintiff is asserting a claim for disability discrimination arising from a failure to make a reasonable accommodation and/or discrimination arising from an adverse employment action taken because of her disability.  On this basis alone, Plaintiff's allegations arguably fail Federal Rule of Civil Procedure 8's requirement that a pleading must state the "factual allegations that are sufficient to give fair notice of what the claim is and the ground upon which it rests." *Andersen News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2010) (internal quotation marks, citations, and alternations omitted).

"A plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following:  (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the

employer has refused to make such accommodations." *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96-7 (2d Cir. 2009) (internal quotation marks and citation omitted).  To establish a prima facie case of discrimination arising from an adverse employment action, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008).  As it is unclear what type of ADA claim Plaintiff is raising, the Court will examine the sufficiency of the pleadings with respect to both types of claims.  ADA claims are also analyzed, like FMLA claims, under the burden shifting framework of *McDonnell Douglas* which as discussed above is not relevant to the Court's analysis on a motion to dismiss.

As discussed above in connection with Plaintiff's FLMA claims, Plaintiff has plausibly alleged that she suffered adverse employment actions when she was offered non-equivalent teaching positions and then terminated from employment.   The Court therefore finds Defendants' argument that this claim must be dismissed due to Plaintiff's failure to allege that she suffered an adverse employment action to be unpersuasive.  The Court will next examine Defendants' argument that the claim must be dismissed due to Plaintiff's failure to allege that she is disabled within the meaning of the ADA or perceived to be so by her

employer.   This prima facie element is common to both types of ADA claims at issue here.

"To establish a disability, plaintiff must (1) show that [he] suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a 'major life activity, and (3) show that [his] impairment substantially limits the major life activity previously identified." *Kravtsov v. Town of Greenburgh*, No.10-cv-3142 (CS), 2012 WL 2719663, at *10 (S.D.N.Y. July 9, 2012) (internal quotation marks and citations omitted).

Since Plaintiff's claim arises after January 1, 2009, the ADA Amendment Act of 2008 ("ADAAA") governs the analysis.  The ADAAA "substantially broadened the definition of a disability under the law, in explicit response to *Sutton v. United Air Lines,* 527 U .S. 471 (1999) and *Toyota Motor Mftrg. v. Williams,* 534 U.S. 184 (2002), in which the ADA's terms defining disability had been strictly defined."  *Hutchinson v. Ecolab, Inc.*, No.3:09cv1848(JBA), 2011 WL 4542957, at *7 (D. Conn. Sept. 28, 2011).  Under the ADAAA, the definition of "disability" is construed in "favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).  "Disability" as defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment." § 12102(1).  "The ADAAA expanded the interpretation of the ADA's three-category definition of 'disability.' For example, 'major life activity' includes 'caring for oneself, performing manual tasks ... walking, standing, lifting, bending,

speaking, breathing. ., and working,' as well as 'the operation of a major bodily function,' including 'neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.'" *Hutchinson,* 2011 WL 4542957, at *8 (quoting Pub.L. No. 110–325, 122 Stat. 3553, 3555 (2008)).

Equal Employment Opportunity Commission ("EEOC") regulations implementing the ADAAA although have no binding effect are "useful to understanding the intended meaning of the Amendments." *Hutchinson,* 2011 WL 4542957, at *8 n.6. The EEOC regulations provide that under the ADAAA an impairment is a disability within the meaning of the statute where "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). The regulations further provide that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

Here, Plaintiff has only alleged that she suffered from the condition of transverse myelitis and has pled no other facts indicating how this condition substantially limited one or more major life activities. Consequently, Plaintiff has not even alleged a "formulaic recitation of the elements of a cause of action" nonetheless the required factual enhancement to render her claim plausible under Rule 12(b)(6). Courts have held that "dismissal is appropriate where a plaintiff fails to allege how an impairment limits a major life activity." *Heckman v.*

*Town of Hempstead*, No.CV10-5455(SJF)(GRB), 2012 WL 1031503, at *4 (E.D.N.Y.

Feb. 24, 2012); *Baptista v. Hartford Bd. of Educ.*, 427 Fed.Appx. 39, 42 (2d Cir.

2011) ("But while Baptista conclusorily alleges that his firing constituted

discrimination on the basis of his alcoholism or HIV-positive status, in none of

his complaints did he describe how either impairment limited any major life

activity—a requirement for a condition to constitute a disability for purposes of

the laws on which he relies."); *Hedges v. Town of Madison*, 456 Fed. Appx. 22, 24

(2d Cir. 2012) (rejecting Plaintiff's argument that the Court should infer plaintiff is

disabled because he alleged that he suffered from a variety of medical conditions

such as Lyme Disease and holding that "even the most liberal standard of

pleadings does not require a court to make such inferences… Assuming the most

minimal of notice pleading standards, a plaintiff is still required to give fair notice

to the defendants of the factual bases for his claims."); *Mary Jo C. v. New York

State & Local Ret. Sys.,* No.09CV5635(SJF)(ARL), 2011 WL 1748572, at *7 (E.D.N.Y.

May 5, 2011) (dismissing ADA claim for failure to state a claim where plaintiff

alleged she suffered from an unidentified mental illness, but did not "allege any

additional facts plausibly suggesting that such mental illness substantially

limited one of more of her major life activities").  Consequently, dismissal is

appropriate here as the Court is not obliged to infer Plaintiff is disabled as a

result of her allegation that she suffers from transverse myelitis.

    The Court further notes that "[p]regnancy does not typically constitute a

disability under the ADA … Moreover, courts generally hold that complications

arising from pregnancy do not qualify as disabilities under the ADA."  *Sam-Sekur*

*v. Whitemore Group*, Ltd., No.11-cv-4938(JFB)(GRB), 2012 WL 2244325, at *7-8 (E.D.N.Y. June 15, 2012) (collecting cases).  "Only in extremely rare cases have courts found that conditions that arise out of pregnancy qualify as a disability. In these cases, it is the physiological impairment that results from complications that renders the person disabled." *Id.* (internal quotation marks and citations omitted).

Moreover, "temporary, non-chronic impairments of short-duration, with little or no long term or permanent impact, are usually not disabilities." *Kennebrew v. N.Y. City Housing Auth.,* No. 01 CIV 1654, 2002 WL 265120, at *18 n. 32 (S.D.N.Y. Feb. 26, 2002); *Leahy v. Gap. Inc.,* No. 07–CV–2008, 2008 WL 2946007, at *4 (E.D.N.Y. July 29, 2008) ("For purposes of the ADA, short term, temporary restrictions are not 'substantially limiting' and do not render a person 'disabled.'"); *Green v. N.Y. City Health & Hosp. Corp.,* No. 04–CV–5144, 2008 WL 144828, at *4 (S.D.N .Y. Jan. 15, 2008) ("To establish a disability under the ADA, there must be some proof of permanency."); *Adams v. Citizens Advise Bureau,* 187 F .3d 315, 316-17 (2d Cir.1999); *Williams v. Salvation Army,* 108 F.Supp.2d 303, 312-13 (S.D.N.Y.2000) ("temporary, non-chronic impairments of short duration, with little or no long-term or permanent impact, are usually not disabilities.").

It appears that even under the ADAAA's broadened definition of disability short term impairments would still not render a person disabled within the meaning of the statute.  EEOC interpretative guidance explains that the "effects of an impairment lasting or expected to last fewer than six months can be

substantially limiting within the meaning of this section" however "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity.  Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. pt. 1630, App.  (internal quotation marks and citations omitted).

Since Plaintiff has failed to allege that her transverse myelitis limits a major life activity and that any impairment as a result of her transverse myelitis was not for a short period of time, she has failed to state a plausible claim for relief under the ADA.  Accordingly, Plaintiff's ADA claims will be dismissed without prejudice. The Court grants Plaintiff leave to amend her complaint, if she can, to allege how her transverse myelitis substantially limited a major life activity and to clarify whether she is asserting a claim for disability discrimination arising from a failure to make a reasonable accommodation, a claim for discrimination arising from an adverse employment action taken because of her disability or both.

## C. CFEPA CLAIMS

In counts four and five, Plaintiff asserts two claims under the Connecticut Fair Employment Practices Act ("CFEPA") alleging that Defendants violated both Section 46a-60(a)(1) and Section 46a-60(a)(7).

### 1.  Section 46a-60(a)(1) Claim

Defendants argue that Plaintiff's 46a-60(a)(1) CFEPA claim should be dismissed because the  Plaintiff "fails to allege which protected class under which she is claiming a violation and again, how she was discriminated against."

[Dkt. #15, p.9 ]. Section 46a-60(a)(1) provides that it shall be a discriminatory practice to "to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . present or past history of . . . physical disability."  Conn. Gen. Stat. §46a-60(a)(1). The standards governing discrimination under CFEPA are the same as those governing ADA claims.  *See Craine v. Trinity College*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both.").

While Connecticut courts apply the same standards under the ADA to analyze CFEPA disability claims, Connecticut courts have interpreted CFEPA's definition of "disability" to be "broader than the ADA or the ADAAA, because it covers 'chronic' impairments even if not permanent."  *Hutchinson*, 2011 WL 4542957, at *9.  In addition, CFEPA does not require that the chronic impairment "substantially limit" a major life activity.  *Grunberg v. Quest Diagnostics, Inc.*, No.3:05-cv-1201, 2008 WL 323940, at *4 n.2 (D. Conn. Feb. 5, 2008). "CFEPA … provides that '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness....The statute does not define 'chronic,' but courts have defined it as 'marked by long duration or frequent recurrence' or 'always present or encountered.' ... With reference to diseases, the term 'chronic' has been defined to mean 'of long duration, or characterized by slowly progressive symptoms; deep-seated or obstinate, or

34

threatening a long continuance; distinguished from acute.'" *Logan v. SecTek, Inc.*, 632 F. Supp. 2d 179, 184 (D. Conn. 2009) (quoting Conn. Gen. Stat. § 46a-51(15)).

Here, Plaintiff's CFEPA claim fails for a similar reason as her ADA claim. Plaintiff only alleges that she suffers from transverse myelitis and has pled no other facts indicating that this condition is "chronic" within the meaning of CFEPA.  Such an allegation is a naked assertion devoid of further factual enhancement that fails state a plausible claim for a Section 46a-60(a)(1) CFEPA violation.  *See Setkoski v. Bauer*, No.HHDCV116023082, 2012 WL 2044805, at *3 (Conn. Super. Ct. May 10, 2012) (holding that plaintiff's allegations that she had a serious medical condition that required surgery and a blood transfusion and three months of medical leave was insufficient to state a claim under CFEPA as Plaintiff failed to allege "that her condition is continuing or will require medication or additional procedures" and that "[m]uch like pregnancy complication that is of a limited duration, the plaintiff's allegation that she suffered a disability that lasted three months is insufficient to be considered chronic.").  Accordingly, Plaintiff's Section 46a-60(a)(1) CFEPA claim will be dismissed without prejudice.  The Court grants Plaintiff leave to amend her complaint, if she can, to allege how her transverse myelitis is a chronic condition.

## 2.  Section 46a-60(a)(7) Claim

Defendants move to dismiss Plaintiff's Section 46a-60(a)(7) CFEPA claim on the basis that Plaintiff failed to allege how their acts violated Section 46a-60(a)(7) considering that "Plaintiff was offered an 18-month absence during the

end of her pregnancy and during her medical condition that arose after her delivery and a position following this 18-month leave of absence." [Dkt. #15, p. 9]. Section 46a-60(a)(7) provides in relevant part: "It shall be a discriminatory practice in violation of this section: . . . For an employer, by the employer or the employer's agent: . . .to fail or refuse to reinstate the employee to her original job or to an equivalent position with equivalent pay and accumulated seniority, retirement, fringe benefits and other service credits upon her signifying her intent to return unless, in the case of a private employer, the employer's circumstances have so changed as to make it impossible or unreasonable to do so."  Conn. Gen. Stat. §46a-60(a)(7)(D).

Although there is a paucity of caselaw interpreting Section §46a-60(a)(7)(D), it is clear that this section provides that it is a discriminatory practice to refuse to reinstate a pregnant employee to her original job or an equivalent position. *Zamore v. Dyer*, 597 F.Supp. 923, 927 (D.Conn. 1984) ("Unlike Title VII, the Connecticut statute explicitly provides that a public employer must reinstate an employee to her original or an equivalent position following maternity leave, if one is granted."); *see also Commission on Human Rights and Opportunities v. Truelove and Maclean, Inc.*, 238 Conn. 337, 353-54 (1996); *Valenti v. Carten Controls Inc.*, No.CIV.3:94CV1769AHN, 1997 WL 766854, at *8 (D. Conn. Dec. 4, 1997).  The Connecticut Supreme Court has stated that "Section 46a-60(a)(7)(D) expressly provides, as a condition precedent to establishing a violation thereof, that a claimant must "[signify] her intent to return" to employment with the employer." *Truelove*, 238 Conn. at 353-54.  As discussed above in connection

36

with Plaintiff's FMLA claims, the Plaintiff has plausibly alleged that the Board refused to reinstate her to her original position as a full time computer teacher and that the substitute teacher and full time class room teacher positions were not equivalent to her original position.  Further, Plaintiff has alleged that she did signify her intent to return to employment during her August 2009 conversation with Bayers following her maternity leave.  Consequently, Plaintiff has made well-pleaded factual allegations, which the Court assumes to be true, that plausibly give rise to an entitlement to relief under Section 46a-60(a)(7)(D).  The Court therefore denies Defendants' motion to dismiss Plaintiff's Section 46a-60(a)(7) CFEPA claim.

### D. Breach of Contract Claim

Lastly, Plaintiff asserts a breach of contract claim, alleging that the "defendant Board of Education breached the terms of its contracts with the Westport Education Association of which Wanamaker was a member and express beneficiary." [Dkt #1, Complaint ¶ 58].  Plaintiff alleges that the Board violated Article XIX(A) of the Collective Bargaining Agreement ("CBA") which provides that an "employee requiring leave of absence because of disability resulting from pregnancy shall be granted necessary leave.  Such leave shall be granted from accumulated sick leave as set forth in Article XVII of this Agreement, in conformity with Section 46a-60 of the Connecticut General Statutes."  *Id.* at ¶34.  As discussed above, Section 46a-60(a)(7) provides that it is unlawful to refuse to reinstate a pregnant employee to her original job or to an equivalent position.  Plaintiff appears to be alleging that Article XIX(A) of the CBA by its reference to

37

that section of CFEPA made compliance with CFEPA an express term of the contract.  Plaintiff's breach of contract claims then appears to be entirely duplicative of her Section 46a-60(a)(7) CFEPA claim which this Court has found to be plausibly pled to survive a Rule 12(b)(6) challenge.

Defendants move to dismiss the breach of contract claim arguing that a "board of education decision regarding a termination hearing under the Teacher Tenure Act can only be appealed pursuant to Conn. Gen. Stat. §10-151(e)" which provides that an aggrieved teacher may appeal the decision of the board of education within thirty days of such decision to the Connecticut Superior Court. [Dkt #15, Def.'s Mot. To Dismiss pp. 21-22]; Conn. Gen. Stat. §10-151(e). Defendants argue that since Plaintiff failed to appeal the Board of Education's decision within 30 days, this Court does not have subject matter jurisdiction over Plaintiff's claim.  Defendants contend that the issue of whether the CBA incorporated CFEPA by reference and whether the Board failed to provide an equivalent position to Wanamaker following her maternity leave was decided at the termination hearing before an impartial panel whose recommendation the Board of Education adopted.  Defendants argue that Plaintiff cannot maintain an independent cause of action for breach of contract where her claim is really a challenge to decision of the Impartial Panel which had to be brought pursuant to Conn. Gen. Stat. § 10-151(e).  Consequently, Defendants argue that Plaintiff's breach of contract claim is barred by res judicata and collateral estoppel as a result of the hearing before the impartial panel.  Defendants also argue that this Court lacks jurisdiction because Plaintiff failed to exhaust the grievance and

arbitration provisions in the CBA and failed to file a claim against her union for breach of the duty of fair representation.

Article IX(E)(1) of the CBA states that "[t]he sole remedy available to any teacher for any alleged breach of this Agreement or any alleged violation of the teacher's rights hereunder shall be pursuant to this grievance procedure; provided, however, that nothing contained herein shall deprive any teacher of any legal right which he/she may have under statutes applicable to such professional employees. [Dkt. #28, Ex. A].  The CBA further provides that "[i]f a grievance is not filed in writing within thirty (30) days from the date on which the event or condition giving rise to the grievance occurred, then the grievance shall be considered waived."  *Id.* at Article IX(B)(2).  The CBA outlines four grievance procedure levels.  The first level is referral to immediate authority, the second is referral to the superintendent of schools, the third is referral to the Board of Education, and the fourth is referral to Arbitration. *Id.* at Article IX(F).

Here, Plaintiff has not alleged that she filed a grievance within 30 days of the Board's offers of the other teaching positions thereby establishing that she hasn't waived her grievance pursuant to Article IX(B)(2).   Moreover, Plaintiff has not alleged that she has followed the grievance and arbitration provisions provided for in the CBS.  Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract … A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition … for an order directing

that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. §§2, 4.  This Court has concluded that the  FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitrate on issues as to which an arbitration agreement has been signed."  *Pomposi v. Gamestop, Inc.*, No. 3:09-cv-340(VLB), 2010 WL 147196, at *3 (D. Conn. Jan. 11, 2010) (citations omitted).  "The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Pursuant to the FAA, "the role of courts [in the present context] is limited to determining two issues: (i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected or refused to arbitrate."  *Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (internal quotation marks and citation omitted).  In this case, it is clear that there is a valid agreement to arbitrate, Plaintiff's breach of contract claim undeniably falls within the scope of the arbitration provision, and Plaintiff has failed to arbitrate her claim pursuant to the terms of the CBA.  Consequently, Plaintiff has failed to plausible state a breach of contract claim as she has failed to allege that she filed a grievance within 30 days as required to preserve her ability to bring such a claim under the CBA's arbitration provisions.  The Court therefore dismisses Plaintiff's breach of contract claim on this basis.  The Court

therefore need not address whether Plaintiff's breach of contract claim is an independent action as Plaintiff contends or whether it is barred by res judicata or collateral estoppel.

### IV.    Conclusion

Based upon the above reasoning, Defendants' [Dkt. #14] motion to dismiss is DENIED IN PART and GRANTED IN PART.   The Court dismisses Plaintiff's ADA and CFEPA Section 46a-60(a)(1) claims without prejudice to leave to amend those claims within 30 days of this Order.  The Court further dismisses Plaintiff's breach of contract claim with prejudice and dismisses the claims against Defendant Landon as barred by qualified immunity.  The Clerk is therefore directed to terminate Defendant Landon as a defendant in this action.  The rest of Plaintiff's claims remain extant for summary judgment and trial.


IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: September 25, 2012